FILED'08 DEC 08 15:05USDC-ORP

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

LISA ROBERTS, BART ROBERTS,
TOMMY WELCH, SALLY WELCH,
GAVIN NELSON, KENNY HEMSTEAD,
LISA BARBEE, KEVIN MCNEIL,
JOHN TENNIS AND RUTH CROSSEN,

                    Plaintiffs,

     v.

MARK CARTON,

                    Defendant.

Civ. No. 08-1071-AC

OPINION AND ORDER

---

ACOSTA, Magistrate Judge:

    Plaintiffs Lisa Roberts, Bart Roberts, Tommy Welch, Sally Welch, Gavin Nelson, Kenny

Hemstead, Lisa Barbee, Kevin McNeil, John Tennis, and Ruth Crossen (collectively "Plaintiffs")

allege three claims against Defendant Mark Carton ("Defendant") arising from the distribution of

William Roberts's ("Bill") assets upon his death. First, Plaintiffs claim that Bill established an express trust and Defendant breached his duty to distribute the trust assets according to Bill's wishes. Second, Plaintiffs claim that the court should impose a constructive trust to remedy Defendant's unjust enrichment. Third, Plaintiffs claim that Defendant engaged in wrongful conduct for which there is no adequate remedy at law. Plaintiffs also seek removal of Defendant as trustee and appointment of a new trustee; distribution of funds pursuant to the express trust or, in the alternative, through the estate and intestate succession; costs and fees associated with bringing this action; and any other equitable relief the court deems necessary.

This opinion addresses three separately filed motions: (1) Defendant's Motion to Dismiss and for Judgment on the Pleadings, (2) Plaintiffs' Motion for Leave to Amend Complaint, and (3) Defendant's Motion to Require Plaintiffs to Post Undertaking Pursuant to Oregon Revised Statutes ("ORS") 128.155. Each motion is addressed in turn.

I.    *Defendant's Motion to Dismiss and for Judgment on the Pleadings*

Plaintiffs initially filed this case in Multnomah County Circuit Court on August 11, 2008, before Defendant removed the case to federal court on September 15, 2008. Plaintiffs attached an exhibit to their original complaint, and described this exhibit as follows: "On October 29, 2004, Bill wrote an email directing how he would like his estate to be redistributed ('Email Directions'). In the Email Directions, Bill had addressed [Defendant] directly requesting both a will be made and that a trust be made (attached as Exhibit 1)." (Complaint ("Compl.") 2.) The court will hereinafter refer to this document as "the email directions." Because Plaintiffs incorporate this document into the complaint the court will consider it part of the complaint for purposes of this motion.

Defendant moves for dismissal because (1) the claims are barred by the statute of limitations,

2

(2) each cause of action fails to state a claim under Federal Rule of Civil Procedure ("Rule") 12(b)(6), (3) the claims are barred by laches, (4) the claims are barred by judicial estoppel, and (5) the claims should be dismissed for failure to join all necessary parties under Rule 12(b)(7) and Rule 19. Defendant also moves for judgment on the pleadings under Rule 12(c) and (d).

*Discussion*

A.    Procedural Issues Raised by Defendant's Motion

First, the relief Defendant seeks must be clarified. Defendant's motion, entitled "Motion to Dismiss Complaint Rule 12(b)(6) Failure to State A Claim; . . . Request for Judgment on the Pleadings," does not expressly identify the claim or claims for which he seeks judgment on the pleadings. In the body of his motion, Defendant simply asserts that he "moves the Court for Judgment on the pleadings." (Motion to Dismiss 1.) The request for judgment on the pleadings is not stated in the alternative to the motions to dismiss Plaintiffs' three claims for relief. Defendant's supporting memorandum provides guidance, as Defendant asks the court to dismiss Plaintiffs' claims and seeks judgment on the pleadings based on several of his affirmative defenses. For example, at page two (2) of his supporting memorandum Defendant asserts that all of Plaintiffs' claims should be dismissed based on statute of limitations grounds, while at page sixteen (16) of the memorandum Defendant "moves for Judgment on the Pleadings based on the doctrine of laches." The court will analyze Defendant's motion accordingly.

Second, although Defendant styles his motion as one to dismiss under Rule 12(b)(6) and for judgment on the pleadings, he submitted numerous documents in support of his motion as if seeking summary judgment instead. On a motion to dismiss, the court must review the sufficiency of the complaint, *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974), and take as true all allegations of material

fact, construing them in the light most favorable to the nonmoving party. *American Family Ass'n, Inc. v. City & County of San Francisco,* 277 F.3d 1114, 1120 (9th Cir. 2002). The court's review is limited to the face of the complaint, any documents referenced in the complaint, and those matters of which the court may properly take judicial notice. *Swartz v. KPMG LLP,* 476 F.3d 756, 763 (9th Cir. 2007). Otherwise, as a general matter, a district court may not consider any material outside of the pleadings when ruling on a Rule 12(b)(6) motion. *Lee v. City of Los Angeles,* 250 F.3d 668, 688 (9th Cir. 2001). Here, the email directions are attached to and referenced in Plaintiffs' complaint, and the court will consider them as part of the complaint on Defendant's motion to dismiss.

However, Rule 12 provides that when matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56. *AT & T Communications-East, Inc. v. BNSF Ry. Co.,* Civ. No. 06-866-HA, 2006 WL 3408035, at *6 (D. Or. Nov. 27, 2006), citing FED R. CIV. P. 12(b). Even so, the court will not consider the other numerous documentary offerings Defendant has submitted for purposes of this motion and declines to convert Defendant's motion to dismiss into a motion for summary judgment.

It has been less than four months since Plaintiffs filed their case in state court and less than three months since Defendant removed it to this court. Almost immediately thereafter, Defendant filed the current motion. The record discloses no discovery conducted since the case's initial filing in state court in August or following its removal to this court in September; indeed, meaningful discovery would not have been possible given that Defendant simultaneously filed a motion to strike and a separate motion to dismiss on September 23, 2008, followed by Plaintiffs' motion to amend

on October 10, 2008, and then Defendant's motion to require undertaking on October 20, 2008. It is doubtful that Plaintiffs have had *any* opportunity to gather and present all material pertinent to the extensive factual offerings that accompany Defendant's motion to dismiss. Finally, converting Defendant's motion to one for summary judgment in light of the factual disputes implied by Defendant's materials would be at least premature. For these reasons, the court will not treat Defendant's motion to dismiss as a motion for summary judgment and the submissions outside the pleadings are excluded unless otherwise noted.

Regarding a judgment on the pleadings, Rule 12(c) states that "[a]fter the pleadings are closed, but within such time as not to delay the trial, any party may move for judgment on the pleadings." FED R. CIV. P. 12(c) (2007). As with a motion to dismiss, for the purposes of the motion, the court may not rely on evidence outside the pleadings. *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir.1990). The factual allegations of the non-moving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false. *Id.* All inferences reasonably drawn from the alleged facts must be construed in favor of the nonmoving party. *General Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir.1989). "Judgment on the pleadings is proper when the moving party clearly establishes, on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc.*, 896 F.2d at 1550; *see also Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001) ("A judgment on the pleadings is properly granted when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law.").

As these standards disclose, the court's examination of a motion for judgment on the

pleadings proceeds on virtually identical premises as does its examination of a motion to dismiss. Accordingly, the court will not consider documents outside the pleadings in considering Defendant's motion for judgment on the pleadings.

### B.    Statutes of Limitation

Defendant cites ORS 12.110(1) as support for the proposition that Plaintiffs' claims are subject to a two year statute of limitations and, thus, the claims are barred. The statute reads:

> An action for assault, battery, false imprisonment, or for any injury to the person or rights of another, not arising on contract, and not especially enumerated in this chapter, shall be commenced within two years; provided, that in an action at law based upon fraud or deceit, the limitation shall be deemed to commence only from the discovery of the fraud or deceit.

OR. REV. STAT. 12.110(1) (2007). However, this is not the limitations period applicable to Plaintiffs' claims. The limitations period governing an action against the trustee of an express trust is specifically addressed by ORS 12.274. An action, "whether in contract, tort or otherwise, arising from any act or omission of the trustee constituting a breach of duty shall be commenced within six years from the date the act or omission is discovered or in the exercise of reasonable diligence should have been discovered." OR. REV. STAT. 12.274 (2007). Accordingly, Plaintiffs' claim arising from the alleged express trust must have accrued within the six years prior to August 11, 2008, the date Plaintiffs filed in state court.[1]

Under the pleadings, the earliest Defendant could have breached his duty under the express trust was the date of Bill's death, March 22, 2005. Because the trust assets were contained in

---

[1] Constructive trusts are not subject to a set limitations period. Because "the imposition of a constructive trust is an equitable action of the court, there is no statute of limitations per se. However, the Oregon Supreme Court held that a court should apply the statute of limitations of analogous law-actions as a yardstick in applying laches." *Roost v. Kern (In re Roost)*, 2006 Bankr. LEXIS 4290 (D. Or. Aug. 17, 2006). The court addresses Defendant's laches argument, below.

6

payable-on-death accounts, Defendant lacked access to the funds until death triggered the distribution. Therefore, Defendant's duty to distribute pursuant to the trust did not arise until Bill's death which occurred well within the six year limitations period established by ORS 12.274. Accordingly, the court finds that Plaintiffs' claim for express trust is not barred by the statute of limitations and this portion of Defendant's motion is denied.

C.    Failure to State a Claim

i.    *Express Trust*

Plaintiffs allege the existence of an express trust based on the email directions attached to the complaint. Under Oregon law, "[a]n express trust is created when a grantor or trustor presently divests himself or herself of full legal and equitable ownership in property, with legal title held by a trustee and equitable ownership resting in a beneficiary." *Brown v. Brown*, 206 Or. App. 239, 249, 136 P.3d 745 (2006) (citing *Windle, Adm'x et al. v. Flinn et al.*, 196 Or. 654, 676, 251 P.2d 136 (1952)). The Oregon Supreme Court stated that "an express trust may be created if the grantor manifests an intention to create it," and that this intention "may be inferred from circumstances attending the conveyance." *In re Buesing*, 240 Or. 399, 405, 402 P.2d 98 (1965). To meet the pleading requirements for an express trust claim, a claimant must allege that there was a present intent to create a trust, a transfer of legal ownership to a trustee, and a transfer of equitable ownership to a beneficiary. *See Brown*, 206 Or. App. at 249 (wherein the court concluded that the petitioners had not met their pleading burden because they "did not allege that the provisions of the divorce decree manifested decedent's intent to presently create a trust, nor did they assert that decedent acted in such a way as to divest himself of the title to the property and to transfer it to another."). It is not necessary that the intent be expressed in writing, though it typically is. *Roost v. Kern (In re Roost)*,

7

2006 Bankr. LEXIS 4290, at *7-8 n.2 (D. Or. Aug. 17, 2006) ("An express trust is defined as a trust 'created with the settlor's express intent, usually declared in writing.'" (quoting *Black's Law Dictionary* 1548 (8th ed. 2004)).

Based on the representations in the complaint and the email directions, the court finds that Plaintiffs' have pleaded facts sufficient to state a claim for express trust. First, Bill communicated repeatedly, both orally and in writing, that he wished to create a trust "to distribute the funds in his bank accounts." (Compl. 2.) On August 14, 2004, Bill made Defendant the beneficiary of several payable-on-death accounts, in an amount totaling at least $172,000. On October 29, 2004, Bill generated a writing, the email directions, explicitly requesting a trust that would distribute all monies from real estate, bank accounts, and retirement accounts equally among a specified group of people. (Compl. 2; Email Directions.) Bill "specifically asked that [Defendant] help him create a will and draft a trust to carry out his intended distribution." (Compl. 2-3.) Plaintiffs' allege, as a first cause of action, that based on the facts, email directions, and ORS 130.150-130.180, "there was an express trust created by both the instrument, oral indication, and actions of the deceased." (Compl. 3.)

Defendant's motion to dismiss implies that Plaintiffs must precisely plead every element of a claim or suffer dismissal under Rule 12(b)(6). A motion to dismiss under Rule 12(b)(6) will be granted only if plaintiff alleges the "grounds" of his "entitlement to relief" with nothing "more than labels and conclusions and a formulaic recitation of the elements of a cause of action[.]" *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1965 (2007) (internal quotation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Id.* at 1965. Plaintiffs' complaint is sufficient to meet this lenient standard. The court concludes that Plaintiffs have sufficiently pleaded that Bill both expressed a present intention to create a trust and that Bill

acted to divest himself of title to the property. Therefore, Defendant's motion to dismiss Plaintiffs' first claim should be denied.

        *ii.*     *Constructive Trust*

Under Oregon law, imposition of a constructive trust requires: "(1) the existence of a confidential or fiduciary relationship; (2) a violation of a duty imposed by that relationship; and (3) failure to impose the constructive trust would result in unjust enrichment." *Hollen v. Fitzwater*, 125 Or. App. 288, 292, 865 P.2d 1298 (1993) (internal citations omitted). Defendant argues that Plaintiffs have failed to prove each element by clear and convincing evidence. However, at this stage Plaintiffs are not required to prove these elements, rather, they need only plead them. Again, on a motion to dismiss, all allegations of fact are taken as true and construed in the light most favorable to the plaintiff.

First, Plaintiffs allege that a confidential relationship existed between Defendant and Bill. "A confidential relation exists between two persons when one has gained the confidence of the other and purports to act or advise with the other's interest in mind." *Legler v. Legler*, 187 Or. 273, 310, 211 P.2d 233 (1949) (quoting *Restatement of the Law, Restitution,* § 166, Comment (d) (1937)). According to Plaintiffs' allegations, Defendant and Bill were close personal friends, they enjoyed a relationship of trust and confidence, Bill relied on Defendant for legal advice, and Defendant acted in furtherance of Bill's estate management by providing him with will and trust forms. On these facts, Plaintiffs could prove the existence of a confidential relationship between Bill and Defendant. Second, Plaintiffs allege that Bill made Defendant the payable-on-death beneficiary of various accounts. The email directions, allegedly authored by Bill, clearly state his intention that proceeds from bank accounts be distributed among the persons named in the email directions. According to

Plaintiffs, Bill communicated this intention to Defendant on several occasions. Plaintiffs allege that this distribution was never made. Under these facts, Plaintiffs have alleged that Defendant breached his duty to redistribute the funds he received upon Bill's death. Third, Plainitffs allege that fifteen people, including Defendant, were entitled to receive an equal share of proceeds from Bill's bank and retirement accounts. Defendant received approximately $172,000 which, split fifteen ways, equals approximately $11,500 per person. Therefore, under Plaintiffs' assertions, Defendant was unjustly enriched by approximately $160,500.

Plaintiffs' facts and allegations are sufficient to state a claim for constructive trust and, therefore, Plaintiffs have adequately pleaded this claim. Accordingly, Defendant's motion to dismiss Plaintiffs' second claim should be denied.

### iii.    *Third Claim for Relief*

It is unclear what Plaintiffs' third claim for relief actually seeks. In the complaint, Plaintiffs restate the facts set forth in the previous two claims and present the following additional information. Upon Bill's death, Defendant had access to Bill's apartment, including any paperwork included therein. Defendant entered the apartment around the time of Bill's death and removed unspecified items. One month later, Defendant decided that he would not act as the personal representative of Bill's estate. Plaintiffs' allege that, knowing that he was the payable-on-death beneficiary, Defendant should have known of the potential conflict of interest and should not have entered Bill's property without consulting an attorney. Further, Defendant's role in sending Bill will and trust documents was akin to practicing law without a license in Oregon. Defendant misled Bill into thinking that he would act as trustee and distribute the funds according to his wishes. Defendant knew that without a trust document, he would be able to keep the money, yet he still entered Bill's

apartment, despite this conflict of interest, and created an appearance of impropriety. Plaintiffs allege that this behavior was wrongful and is behavior for which there is no adequate remedy at law.

This court can construe from the allegations that Plaintiffs' claim is an equitable one. Plaintiffs allege that Defendant breached his duty as trustee, put himself in a position to act unlawfully when he entered Bill's property following his death, unlawfully performed legal duties on Bill's behalf, and otherwise ignored the potential conflict of interest he had as Bill's payable-on-death beneficiary and trustee of the money he received as a result. Beyond this, however, it is unclear from the complaint itself what specific claim is being plead.

Defendant characterizes Plaintiffs' third claim as "a claim for imposing a constructive trust based on alleged wrongful acts." (Defendant's Memorandum ("Def.'s Memo.") 15.) Defendant points out that Plaintiffs do not allege any actual wrongful conduct by Defendant, but merely the possibility of wrongful conduct, as well as Defendant's knowledge of the law which, according to Plaintiffs, makes his conduct even more wrongful under the circumstances.

Plaintiffs respond that they "have fulfilled their pleading duty in stating a claim for imposition of a constructive trust in furtherance of Plaintiffs' Second and Third causes of action." (Plaintiffs' ("Pls.'") Memo. 5.) Plaintiffs cite page six (6) of their complaint for the proposition that "in alleging that there was an inequitable situation via [Defendant] being unjustly enriched with 'no adequate remedy at law' the second and third causes of action are properly found in the Complaint and should not be dismissed." *Id.* Both Plaintiffs and Defendant characterize the third claim as one for imposition of a constructive trust, though the rationale is slightly different from the second claim for relief, which also calls for equitable relief in the form a constructive trust.

Applying the analysis used above to evaluate the second claim for relief, the court finds that

11

the third claim for relief does not meet the standard set for stating a claim in federal court. The court is satisfied that Plaintiffs have alleged facts sufficient to establish a confidential or fiduciary relationship between Bill and Defendant. However, the third cause of action does not allege a separate breach of duty that would give rise to a distinct basis upon which the court can impose a constructive trust. Therefore, although the facts asserted in support of the third claim may form the backdrop of Plaintiffs' claim for constructive trust in conjunction with the second claim for relief, these facts alone are insufficient to give rise to a constructive trust. Accordingly, Defendant's motion to dismiss Plaintiffs' third claim for relief for failure to state a claim should be granted, but with leave to replead the facts and allegations contained therein under Plaintiffs' second claim for relief.[2]

### D.    Laches

Defendant argues that Plaintiffs' claims for constructive trust are barred by laches. Laches is "[t]he equitable doctrine by which a court denies relief to a claimant who has unreasonably delayed in asserting the claim, when that delay has prejudiced the party against whom relief is sought." *Black's Law Dictionary*, 891 (8th ed. 2004). To establish that the defense of laches should bar a given claim, the proponent must establish that the "(1) plaintiff [] delayed asserting [his] claim for an unreasonable length of time, (2) with full knowledge of all relevant facts (and laches does not start to run until such knowledge is shown to exist), (3) resulting in such substantial prejudice to defendant[s] that it would be inequitable for the court to grant relief." *Fontana v. Steenson*, 145 Or. App. 229, 232, 929 P.2d 336 (1996) (quoting *Mattson v. Commercial Credit Business Loans*, 301

---

[2] Plaintiffs have since moved to amend their complaint to replead their third claim for relief. Plaintiffs' motion is addressed below.

Or. 407, 419, 723 P.2d 996 (1986)).

In evaluating whether an amount of time was reasonable, for purposes of laches, a court may consider the applicable statute of limitations to a similar claim at law. *Mattson*, 301 Or. at 420 ("What is an unreasonable length of time is determined by examining all circumstances. Although equity is said not to be bound by statutes of limitations, those statutes are generally applied by analogy when laches is asserted."). Under these facts, the analogous action at law to the equitable remedy of constructive trust is breach of express trust. If the court concludes that the email directions did not create an express trust, then in the alternative Plaintiffs ask the court to establish a constructive trust to give effect to the email directions. Therefore, the nature of the breach is the same, and the analogous statute of limitations for purposes of laches analysis is six years. *See* OR. REV. STAT. 12.274 (establishing a six year statute of limitations for an action against the trustee of an express trust). Even though Plaintiffs' claim requesting declaration of a constructive trust was filed within the limitations period, laches is an equitable defense and the court is not bound by limitations periods established for claims at law.

To establish laches, Defendant must show that Plaintiffs had knowledge of all facts relevant to their claim, but persisted in delaying this claim. Here, Defendant's duty as trustee to distribute the proceeds he received as the payable on death beneficiary of Bill's accounts did not accrue until Bill's death, on March 22, 2005. Even assuming that Plaintiffs had knowledge of the email directions and an awareness that Defendant would not act in accordance with these directions, at the time of filing, Plaintiffs' claims had, at most, been accruing for three years and five months. This time period, an absolute maximum, is still substantially less than the six years afforded a claim filed for breach of an express trust.

Furthermore, the court finds that Defendant has not incurred "such substantial prejudice" by any delay in bringing these claims to court. Although the court will not consider Defendant's submissions for the reasons previously stated, it bears noting that the submissions accompanying Defendant's motion to dismiss consist of numerous declarations in which several of those witnesses supply specific detail about the events that occurred immediately following Bill's death on March 22, 2005. Suffice it to say that Defendant does not meet the applicable standard that the delay resulted in "*such* substantial prejudice" that Plaintiffs' claims should be dismissed. *Fontana*, 145 Or. App. at 232 (emphasis added).

Based on the information in the pleadings the court cannot conclude when the Plaintiffs had knowledge of the relevant facts, or the reasons why they did not file their lawsuit sooner. Furthermore, because the statute of limitations relevant to a similar claim at law is substantially longer than the time that has so far passed, the court cannot conclude that this delay was unreasonable. Accordingly, at this stage, laches should not bar Plaintiffs' claims.

E.    Judicial Estoppel

Defendant argues that because two plaintiffs, Lisa Roberts and Bart Roberts, took a position in probate court contrary to the position they currently take in this case, the doctrine of judicial estoppel should act as a bar to their claims. The doctrine of judicial estoppel "precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position." *Rissetto v. Plumbers and Steamfitters Local 343*, 94 F.3d 597, 600 (9th Cir. 1996). The doctrine is intended to protect the integrity of the courts, including "general considerations of the orderly administration of justice and regard for the dignity of judicial proceedings . . . [and] is intended to protect against a litigant playing fast and loose with the courts."

14

*Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990), *cert. denied*, 501 U.S. 1260 (1991).

Accordingly, the doctrine is not designed to protect the interests of individual parties. *Browning*

*Mfg. v. Mims (In re Coastal Plains, Inc.)*, 179 F.3d 197, 205 (5th Cir. 1999) ("Because the doctrine

is intended to protect the judicial system, *rather than the litigants*, detrimental reliance by the

opponent of the party against whom the doctrine is applied is not necessary.") (emphasis in original).

As discussed above, when evaluating a motion to dismiss, the court is generally limited to

the allegations in the complaint. In specific circumstances, this limitation is overcome. As one

example: "the court may take judicial notice of documents that are 'a matter of general public

record.'" *Caligiuri v. Columbia River Bank Mortgage*, 2007 WL 1560623, at *1 (D. Or. May 22,

2007) (quoting *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1198 (9th Cir. 1988)). For purposes

of this motion, the court takes judicial notice of the court documents arising from Plaintiffs Lisa

Roberts and Bart Roberts's probate action, filed in Multnomah County Circuit Court, Probate

Department, Case Number 0507 91151.

Defendant submitted the following relevant exhibits to the Declaration of Mark Carton In

Support of Defendant's Motion to Dismiss Complaint Under FRCP 12(b)(6)(7) and Rule (19)

("Carton Decl."). Exhibit 4 is a court document titled "Information to Heirs" and is addressed to

Judy Benson, Bill's mother, and Lisa Gamache (Lisa Roberts) and Timothy Roberts (Bart Roberts),

Bill's sister and brother, respectively. The document gives contact information for the personal

representative and and his attorney in the probate action. Exhibit 5 is labeled "Inventory," and gives

"a complete inventory of all the property of the estate that has come into [the personal

representative's] possession or knowledge[.]" (Carton Decl. Exhibit ("Ex.") 5 at 1.) The document,

dated June 19, 2006, lists as estate assets musical equipment, possible proceeds from a personal

injury lawsuit, a refund check from CITI, and an unemployment check. Together, the checks have a total money value of $513.00. Exhibit 6, dated May 25, 2007, is titled "First Annual Accounting and Petition for Extension of Time to Close Estate." An "Asset Schedule" is attached and is a list of "all assets that the personal representative has been able to determine existed during the accounting period and their disposition." (Carton Decl. Ex. 6.) According to the asset schedule, the cash value subject to probate remains $513.00, comprised of the refund check from CITI and the unemployment check. Exhibit 7, dated May 27, 2008, is titled "Amended Inventory." Here, the cash assets of the estate total $6,084.03, and are attributable to a Washington Mutual Checking Account. Exhibit 8 is titled "Verified Statement in Lieu of Second and Final Accounting and Petition for General Judgment of Final Distribution," and date stamped May 28, 2008. This represents another inventory of probate assets, this time taking into account payment of attorneys fees and administrative costs. After deducting fees and costs, the cash value of the probate estate is zero.

The assets at issue in this case, payable-on-death benefits received by Defendant upon Bill's death, are not mentioned in the probate court documents. The Oregon statute governing disposition of a deposit upon death states: "A right of survivorship arising from the express terms of the account or under this section, a beneficiary designation in a trust account, *or a P.O.D. payee designation*, cannot be changed by will." OR. REV. STAT. 708A.470(5) (2007) (emphasis added). In other words, payable-on-death accounts are non-probate assets. Therefore, Plaintiffs Lisa Roberts and Bart Roberts did not take a position in the probate case that was contrary to their express and constructive trust claims in this case.

However, Defendant correctly argues that some of the personal property disposed of in probate was also the subject of the email directions. The top portion of the email directions outlines

Bill's wishes regarding distribution of specified personal property upon his death. In particular, Bill wanted Mike Johnson to receive "All Stereo Gear, Gibson Guitar, Stratocaster Guitar," and Jon Tennis to receive "All Percussion Instruments, Drums, ect [sic][.]" (Email Directions.) This property was also referred to in Exhibit 5. Although Plaintiffs now wish to rely on the email directions, they did not rely on the email directions for disposition of this property in the probate proceedings. This fact at least raises the possibility of a position inconsistent with the probate court proceeding.

Even so, at this juncture, the court is unwilling to apply judicial estoppel to Plaintiffs Lisa Roberts and Bart Roberts's claims. The court does not know whether the ultimate disposition of the assets in question was actually inconsistent with the email directions. On the record before it, the court cannot conclude that Plaintiffs Lisa Roberts and Bart Roberts made representations to another court in direct opposition to their claims before this court. Furthermore, there is no assertion here that the email directions actually constitute a valid will, rather, the claim here is that they effectively created an express or implied trust. Thus, the court should deny Defendant's motion to bar Plaintiffs' claim for breach of express trust based on judicial estoppel without prejudice to Defendant's ability to raise the issue at a later stage of litigation.

F.    Failure to Join Necessary Parties

Defendant cites ORS 28.110 for the proposition that Plaintiffs must join all persons named in the email directions that are not currently parties to this action. The statute provides: "When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding." OR. REV. STAT. 28.110 (2007).

A review of the email directions reveals that there are, indeed, fourteen persons named on the document, in addition to Defendant. The email directions read, in relevant part, "I [Bill] want to establish a Trust that all Proceeds of Real Estate, Bank accounts, Retirement Accounts are set aside and Divided Equally to the Parties mentioned above." (Email Directions.) Therefore, based on Plaintiffs' allegations, fourteen people should share in the proceeds that are the subject of this lawsuit, four of whom are not parties to the lawsuit. However, at the current stage of review, the court cannot conclude that the action should be dismissed for failure to join all necessary parties. Thus, Defendant's motion to dismiss Plaintiffs' claims as barred for failure to join necessary parties should be denied without prejudice. To the extent that Plaintiffs are permitted to amend their complaint, the amended pleading must join all necessary parties.

G.    Motion for Judgment on the Pleadings

Defendant also moves for judgment on the pleadings, pursuant to Rule 12(c) and (d). For the reasons stated above, this motion should be denied.

II.    *Plaintiffs' Motion for Leave to File an Amended Complaint*

Plaintiffs move for leave to file an amended complaint, pursuant to Rule 15. The rule states, in relevant part, that where a party has already been served with a responsive pleading, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(1)-(2) (2007). Defendant opposes the motion.

Plaintiffs argue that the motion should be granted for the following reasons. First, the standard for allowing amendment is a liberal one. Second, after amendment the complaint will better conform to Plaintiffs' response to Defendant's Motion to Dismiss. Third, the amendments will

18

facilitate Plaintiffs' equitable claims and are thus in the interests of justice. Finally, the amendments will increase the clarity and efficiency in this litigation "as it will help the parties better navigate this matter." (Pls.' Memo. 2.)

Defendant opposes the motion, first, because Plaintiffs failed to comply with Local Rule of Civil Practice ("LR") 15.1. This rule requires that a party moving for leave to file an amended pleading must "[d]escribe the changes made." LR 15.1(c)(2). Second, Defendant claims Plaintiffs have attempted to perpetrate a fraud on the court and a party with unclean hands should not be granted leave to amend in furtherance of this fraud. Third, the proposed amendments are futile as they are based on an unauthenticated document. Finally, Defendant reprises the statutes of limitations arguments explored at length in his motion to dismiss.

The court agrees that a liberal standard is applied to motions for leave to amend. *AmerisourceBergen Co. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006). Even so, "a district court need not grant leave to amend where the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *Id.* Defendant does not argue that this amendment is prejudicial to his ability to present his defense to these claims. The proposed amended pleading does not depart in any substantial way from the original pleading. It asserts the two original claims, express and constructive trust, and adds a third claim (or clarifies its third claim) for resulting trust. Although the resulting trust claim is arguably new, it is very similar to Plaintiffs' claim for constructive trust, and arises from the same set of facts and circumstances giving rise to all of Plaintiffs' claims. Therefore, it will place no additional burden on Defendant if leave to amend is granted.

At this point, the court declines to rule upon the authenticity or probative value of the email

19

directions. For purposes of Defendant's motion to dismiss, the court recognized the email directions as incorporated into the complaint, and accepted the allegations therein as true. This posture holds true for purposes of this motion and the court reserves substantive treatment of this issue for a later date. Defendant has asserted no other basis for a finding of bad faith, and the court accepts the motion for leave to amend as made in good faith.

Plaintiffs' amendment will not create an undue delay in litigation. As a practical matter, this motion was set for oral argument at the same time as several other motions and will be ruled on concurrently with these other motions. The substance of the amendments does not alter the theory of Plaintiffs' case and, as Plaintiffs urge, may increase the efficiency of this litigation.

Defendant asserts the same arguments it raised in its motion to dismiss for the proposition that Plaintiffs' amendments are futile. However, based on the rulings above concerning Defendant's motions to dismiss and for judgment on the pleadings, the court does not find Plaintiffs' claims or proposed amendments futile.

Regarding LR 15.1(c)(2), Plaintiffs do little in their memorandum to describe the changes made in the proposed amended pleading. Plaintiffs state that the amended complaint will "better conform with the structure format found in Plaintiffs' Response to Defendant's Motion to Dismiss and Strike Plaintiffs' Complaint . . . regarding allegations requesting the declaration of an express or resulting trust, and/or the imposition of a constructive trust over the proceeds of a payable on death account made payable to Defendant[.]" (Pls.' Memo 2.) In this way, Plaintiffs describe the spirit of their amended complaint, if not the details.[3] In fact, Plaintiffs' complaint is different in a

---

[3] The court's review of decisions in this district reveals minimal treatment of LR 15.1(c)(2). Judge Stewart referred to the rule in *Cole v. Builders Square*, 2000 U.S. Dist. LEXIS 14385, at *9 (D. Or. Sept. 20, 2000), striking an amended complaint where the plaintiff did not move for leave

variety of ways that Plaintiffs fail to describe.

First, the amended complaint adds defendants, designated "DOES 1-10," alleging that Defendant and DOES 1-10 "were the agents, representatives, partners, joint venturers or employees of one another[.]" (Amended Compl. 2.) Second, Plaintiffs allege the three claims in a different manner. Initially, the three claims were for express and constructive trust. Now, plaintiffs allege claims for express, constructive, and resulting trust. These claims, however, are substantially similar to those originally plead. Third, Plaintiffs add a claim for prejudgment interest to claims one and two.

Although the amended complaint contains changes that were not described in the supporting memorandum, the amended complaint is substantially similar to the original complaint, contains only three claims, and thus Plaintiffs' failure does not impose a meaningful burden on either the court or Defendant. Accordingly, Plaintiffs' motion for leave to file an amended complaint is granted.[4] However, permission to amend is premised upon Plaintiffs' representations that they will add all necessary parties, namely, those persons named in the email directions but not appearing as plaintiffs to the current action. Therefore, the court requires that the necessary parties to the action be joined before the amended complaint is filed in this court.

---

of court and filed the amended pleading unilaterally. Judge Stewart gave, as an additional reason for striking the amended complaint: "Cole also violated LR 15.1, which addresses amended and supplemental pleadings. LR 15.1 requires any party filing, or moving to file, and amended pleading to 'describe the changes made.'" *Id.* Other cases citing this local rule are only more general in their treatment. The cases provide no guidance as to what constitutes description for purposes of the local rule.

[4] In granting Plaintiffs' motion, the court denies Defendant's Motion to Strike, filed on September 23, 2008, as moot with leave to refile if Plaintiffs' amended complaint does not substantially correct the material deficiencies raised by the original motion.

III.    *Defendant's Motion to Require Plaintiffs to Post Undertaking Pursuant to ORS 128.155*[5]

Defendant moves the court to require Plaintiffs to post an undertaking by irrevocable letter of credit pursuant to ORS 128.155, for Defendant's costs and attorney fees in the event Plaintiffs are unsuccessful. Plaintiffs counter that the existence of a trust has not yet been established and, therefore, this motion is untimely.

A.    Repeal of ORS chapter 128

The majority of ORS chapter 128 was repealed by ORS chapter 130, passed by the Oregon Legislature in 2005. Chapter 130 explicitly repeals ORS 128.135, 128.145, and 128.155. *Oregon 73rd Legislative Assembly*, Chapter 348, Senate Bill 275, 2005 Or. Laws 348 § 128 (2005). Even so, Defendant argues that the provisions of ORS chapter 128 still apply in this case because "[a]ll of decedent's acts and all of Defendant's acts complained of occurred prior to January 1, 2006." (Def.'s Memo. 2.) Defendant cites ORS 130.910(1) in support of this argument. ORS 130.910(1) states:

> Except as otherwise provided in ORS chapter 130:
> (a) ORS chapter 130 applies to all trusts created before, on or after January 1, 2006.
> (b) ORS chapter 130 does not apply to judicial, administrative and other proceedings concerning trusts commenced before January 1, 2006.
> (c) any rule of construction or presumption provided in ORS chapter 130 applies to trust instruments executed before January 1, 2006, unless there is a clear indication of a contrary intent in the terms of the trust.
> (d) an act done before January 1, 2006, is not affected by ORS chapter 130.

OR. REV. STAT. 130.910(1) (2005).

ORS 130.910(1) does not support Defendant's argument. First, subsection (a) clearly states

---

[5] The parties have not addressed whether this is a procedural or substantive requirement of Oregon law that this court must address. Therefore, the court assumes without deciding that the undertaking requirement is substantive and addresses application of that requirement below.

that ORS chapter 130 applies to all trusts, regardless of their date of creation. Therefore, to the extent that an express trust exists under the facts of this case, it is governed by ORS chapter 130. Second, under subsection (b), an action commenced prior to January 1, 2006, is not subject to ORS chapter 30. Here, however, the case was filed in state court on August 11, 2008. It was removed to federal court on September 15, 2008. Under these facts and subsection (b), ORS chapter 130 applies to this case.

Defendant's argument is likely premised on subsection (d), which refers to "an act done" before the effective date of the statute. Defendant writes: "All of decedent's acts and all of Defendant's acts complained of occurred prior to January 1, 2006 and therefore Chapter 128 applies to this case." (Defendant's Memo. 2.) Taken in the context of the statute as a whole, "an act" cannot refer to the act of creating a trust, because that would conflict with subsection (a), which applies Chapter 130 to all trusts, regardless of the date the trust was created. The act contemplated by ORS 128.135 is that of a trust beneficiary seeking equitable remedies. Upon that act, the beneficiary was required to post a bond and thus the act that 128.135 refers to is analogous to the act of filing a lawsuit. Because this lawsuit was not filed prior to January 1, 2006, ORS 128.135 cannot and does not apply to Plaintiffs' claims.

B.   Application of ORS 128.155

Even if the relevant sections of Chapter 128 were still in place, the undertaking requirement would not apply to Plaintiffs' claims. ORS 128.155 states that "[a] beneficiary who petitions a court under ORS 128.135 or 128.145 shall file with the petition an irrevocable letter of credit issued by an insured institution . . . or an undertaking with one or more sureties to the effect that the beneficiary will pay all costs, disbursements and reasonable attorney fees that may be ordered against

the beneficiary in the proceeding." OR. REV. STAT. 128.155 (2003). As the statutory text makes plain, this requirement applies to those bringing claims under two specific statutory sections: ORS 128.135 and ORS 128.145. Plaintiffs' first claim, alleging the existence of an express trust, is premised on "the above facts and Exhibit 1 and ORS 130.150 - ORS 130.180 [.]" (Complaint 3.) This is the statutory scheme currently in place and the one that governs Plaintiffs' express trust claim. Therefore, ORS 128.155 does not apply to Plaintiffs' first claim.

Plaintiffs' second and third claims seek declaratory relief via establishment of a constructive trust. At present, the potential constructive trust does not exist. ORS 128.135 is titled "Authority of beneficiary to obtain equitable remedies to modify administration of trust; effect of proceeding; authority of court." For purposes of this section, as well as ORS 128.145 and 128.155, the statute defines beneficiary as "any vested or contingent beneficiary of a trust, determined as of the date of the petition, or the guardian or conservator of such beneficiary or the personal representative of a deceased beneficiary." OR. REV. STAT. 128.135 (2003). Under the facts alleged thus far in the case, none of the ten Plaintiffs are beneficiaries of a trust because the existence of a trust has not yet been established. The court acknowledges that Plaintiffs seek equitable relief by asking the court to recognize a constructive trust and prevent Defendant from being unjustly enriched. The equitable remedies contemplated in ORS 128.135 are those belonging to a beneficiary of a trust, however, not a party seeking to establish the existence of a trust based on principles of equity. Accordingly, ORS 128.155 does not apply to Plaintiffs' second and third claims.

C.    Plaintiffs' Claim for Attorney Fees

As Defendant points out, this analysis applies equally to Plaintiffs' claim for attorney fees. In responding to Defendant's motion to strike, Plaintiffs argue that they are entitled to attorney fees.

However, the case Plaintiffs cite for this proposition, *In re Huss*, 99 Or. App. 449, 782 P.2d 451 (1989), itself relies on the attorney fee provision in ORS 128.155. For the same reason ORS 128.155 does not require Plaintiffs to post an undertaking pursuant to this cause of action, it does not authorize an award of attorney fees in the event Plaintiffs are successful.

For the reasons stated, Defendant's motion to require Plaintiffs post an undertaking pursuant to ORS 128.155 is denied.

### Conclusion

Based on the foregoing, the court concludes that Defendant's motion to dismiss for failure to state a claim should be granted in part and denied in part; Defendant's motion to dismiss because claims barred by laches should be denied; Defendant's motion to dismiss because claims barred by judicial estoppel should be denied; Defendant's motion for judgment on the pleadings should be denied, and Defendant's motion to dismiss for failure to join necessary parties should be denied. The above rulings are without prejudice.

Further, Plaintiffs' motion for leave to file an amended complaint is GRANTED. Defendant's motion to require Plaintiffs post an undertaking is DENIED, with prejudice.

### Scheduling Order

The above Findings and Recommendations concerning Defendant's Motion to Dismiss and for Judgment on the Pleadings (#5) will be referred to a United States District Judge for review. Objections, if any, are due no later than December 22, 2008. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

If objections are filed, any party may file a response within fourteen days after the date the objections are filed. Review of the Findings and Recommendation will go under advisement when

the response is due or filed, whichever date is earlier.

DATED this 8th day of December, 2008.

JOHN V. ACOSTA
United States Magistrate Judge