

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


LISA ROBERTS, BART ROBERTS,
TOMMY WELCH, SALLY WELCH
GAVIN NELSON, KENNY HEMSTEAD
LISA BARBEE, KEVIN MCNEIL,
JOHN TENNIS AND RUTH CROSSEN,

     Plaintiffs,

  v.

MARK CARTON,

     Defendant.

CV 08-1071-AC

FINDINGS AND
RECOMMENDATION

ACOSTA, Magistrate Judge

   This matter comes before the court as a result of plaintiff Kevin McNeil's ("McNeil") several

failures to participate in discovery in this case and his refusal to comply with the court's March 2,

2009, discovery order and its March 13, 2009, order to show cause. McNeil did not show good

cause, or any cause, by the March 23, 2009, show-cause deadline, and instead advised the court that

1 - FINDINGS AND RECOMMENDATION

he would not comply with the court's orders despite knowledge of potential sanctions.

The record demonstrates that McNeil's failures and refusals to comply with discovery and the court's orders were willful and that this conduct has prejudiced Defendant Mark Carton's ("Defendant") ability to defend against the claims brought by Plaintiffs Lisa Roberts, Bart Roberts, Tommy Welch, Sally Welch, Gavin Nelson, Kenny Hemstead, Lisa Barbee, Ruth Crossen, John Tennis, and McNeil (collectively "Plaintiffs"). Accordingly, McNeil's claims against Defendant should be dismissed, with prejudice. Furthermore, McNeil should be barred from testifying in this case by affidavit, deposition, or trial appearance, unless: (1) he complies with the court's prior orders requiring him to follow specific procedures for giving testimony; and, (2) complies in a timely manner sufficient to permit Defendant effective use of his testimony.

*Background*

Plaintiffs allege three claims against Defendant arising from the distribution of William Roberts's ("Bill") assets upon his death. First, Plaintiffs claim that Bill established an express trust and that Defendant breached his duty to distribute the trust assets according to Bill's wishes. Second, Plaintiffs ask the court to impose a constructive trust to remedy Defendant's alleged unjust enrichment created by his retention of the assets that were to be distributed. Third, Plaintiffs claim that Defendant engaged in wrongful conduct for which there is no adequate remedy at law. Plaintiffs also seek removal of Defendant as trustee and appointment of a new trustee; distribution of funds pursuant to the express or constructive trust or, in the alternative, through the estate and intestate succession; costs and fees associated with bringing this action; and any other equitable relief the court deems necessary.

Plaintiffs' claims hinge on the authenticity of a document purporting to be an email from Bill

2 - FINDINGS AND RECOMMENDATION

to an undisclosed recipient or recipients. This document is hereinafter referred to as "Exhibit 1." Plaintiffs submitted Exhibit 1 as evidence of Bill's intent to create a trust and the manner in which he intended his personal property be distributed upon his death. On November 24, 2008, the parties appeared before the court for oral argument on several motions. At this time, Defendant raised concerns about the origins and authenticity of Exhibit 1. The court agreed that, based on the evidence currently in the record and the appearance of Exhibit 1, its authenticity was in question. Because the Plaintiffs' claims rely heavily, if not entirely, on Exhibit 1, the court directed the parties to conduct discovery on the authenticity issue prior to addressing any other issues in the case.

Initially, the court directed Plaintiffs to provide Defendant with the most recent contact information in Plaintiffs' possession for those individuals, including Plaintiffs themselves, who knew or might know about Exhibit 1 and its creation. This would enable Defendant to determine which of those individuals to depose. The court also suggested that Plaintiffs provide Defendant with declarations for each such individual so that the parties could avoid depositions of those without knowledge of Exhibit 1's creation. The court also directed Plaintiffs to identify the person or persons with the most knowledge of Exhibit 1's creation and allow Defendant to personally inspect the original document.

On December 30, 2008, the court conducted a status conference by telephone at Defendant's request. At that time, Defendant had neither received the requested contact information nor been allowed to inspect the original Exhibit 1. The court directed Plaintiffs to provide all remaining contact information to Defendant, including contact information for other individuals with personal knowledge of Exhibit 1's authenticity. The parties also agreed that Defendant would inspect the document on or before the morning of January 12, 2009.

3 - FINDINGS AND RECOMMENDATION

On January 29, 2009, Defendant requested a phone conference with the court. Defendant had been unable to inspect the original Exhibit 1 because, apparently, Plaintiffs possessed only copies of Exhibit 1. According to Defendant, Plaintiffs informed him that McNeil was the only person to receive the original Exhibit 1 from Bill and that McNeil's parents and sisters were the only other persons to have had direct conversations with Bill about Exhibit 1. Plaintiffs later claimed that others of their number might have an original of Exhibit 1 or have had conversations with Bill about the document. Defendant complained that two deponents, McNeil's parents, had not appeared for deposition. Defendant sought an order requiring McNeil's parents to appear for deposition before Defendant returned to California or, in the alternative, for Plaintiffs to pay Defendant's costs to return to Oregon to depose the McNeil family members.

The court convened the phone conference later that same day. Plaintiffs' counsel did not dispute Defendant's representations. Plaintiffs' counsel indicated that McNeil could be deposed for only ninety minutes at a time, due to a physical injury, but that they had tried to accommodate Defendant's "continuous" depositions to facilitate completion of McNeil's deposition. The court ordered McNeil's parents to be available for deposition on January 30, 2009, with McNeil's sister to be deposed at a later date.

On February 6, 2009, Defendant e-mailed Plaintiffs' counsel, with a copy to the court, again objecting to Plaintiffs' unresponsiveness and renewing his request for a summary of the information that each Plaintiff possessed so that Defendant could decide which of them to depose. In response, the court emailed the parties and directed that depositions be set only for mutually agreeable dates and times. The court also directed counsel to advise one another whether they could assure the presence of their respective witnesses or whether, instead, a subpoena would be required. The court

4 - FINDINGS AND RECOMMENDATION

specifically cautioned counsel that witnesses who failed to appear for properly scheduled depositions would be subject to contempt of court sanctions. Furthermore, the court directed the parties to provide requested documents in advance of scheduled depositions. The court made clear that if the parties did not comply with these directives, the court would itself schedule the depositions and attendance at places, dates, and times set by the court would be mandatory.

On February 10, 2009, Defendant asked for yet another a telephone status conference. That morning, and for the third time, McNeil had failed to appear for his scheduled deposition. The phone conference occurred later that same day and the court ordered the following. First, McNeil was to appear for deposition on February 11, 2009, and, if necessary, February 12, 2009. Second, failure to appear, "without substantial justification," would subject him to a subpoena ordering him to appear for deposition at the federal courthouse. (Docket No. 58.) Third, failure to comply with this and future court orders would subject McNeil to "sanctions for contempt, up to and including his dismissal with prejudice from this case as a plaintiff." *Id.*

McNeil appeared for deposition on February 11, 2009, but stated on the record that he was unable to give competent testimony because of stress and health problems. During a deposition recess, Plaintiffs' counsel informed the court that McNeil exhibited outward signs of serious physical discomfort and general incoherence. McNeil had provided his attorney with voluminous medical records and claimed to be taking numerous different medications. Thus, Defendant and Plaintiffs' counsel agreed that, upon a limited release by McNeil, they would discuss with McNeil's treating physician if and when McNeil would be competent to testify. In response, the court ordered that upon their conferral with McNeil's physician, McNeil's deposition would continue consistent with any physician-recommended accommodations. Also, because of the crucial nature of McNeil's

5 - FINDINGS AND RECOMMENDATION

testimony, all efforts should be taken to see that it was "obtained and, when finally obtained, his testimony was accurate, complete," and unaffected by his medications and underlying medical conditions.  (Docket No. 59.)

On March 2, 2009, and at Plaintiffs' request, the court held a telephone status conference. Counsel jointly reported that McNeil was scheduled to see a physician that week but that he had refused to give his own attorneys a release to allow them to speak with the physician.  The court ordered McNeil to provide the release to his attorneys by March 9, 2009.  The release was to name both attorneys of record for the Plaintiffs, but not Defendant.[1]  The court ordered the completion of McNeil's deposition by March 31, 2009, or if good cause was shown, no later than April 17, 2009. The court wrote:  "Any refusal or failure, without demonstrated good cause, by Mr. McNeil, to cooperate in these procedures will subject his claim to dismissal with prejudice and to his being barred from giving testimony in any form in this case."  (Docket No. 61.)

On March 10, 2009, Plaintiffs' counsel informed the court that McNeil had not provided the release by the court-ordered deadline, despite the fact that McNeil and the other plaintiffs had been apprised of the court's order.  Plaintiffs' counsel had repeatedly attempted to contact McNeil, but received no response.  On March 13, 2009, the court held a telephone status conference and Plaintiffs' counsel explained that since his March 10, 2009, status letter to the court he had made two more unsuccessful attempts to communicate with McNeil.  Following this status conference, the court entered an order to show cause.  After recounting the relevant facts, the court wrote:

> [P]laintiff Kevin McNeil must show good cause why his claims against defendant should not be dismissed, with prejudice, and why he should not be barred from providing testimony in this case in any form, for his failure or refusal to comply with

---

[1] Defendant, an attorney licensed in California, is pro se in this case.

the court's March 2, 2009, order.  IT IS FURTHER ORDERED that plaintiff Kevin McNeil shall make this good cause showing no later than noon on Monday, March 23, 2009.

(Docket No. 63.)

On March 23, 2009, Plaintiffs' counsel sent a second status report to the court and confirmed that Plaintiffs' counsel had spoken to McNeil about the March 13 status conference and the court's order to show cause, but that McNeil was unwilling to provide the partial medical release.  Plaintiffs' counsel stated that McNeil understood and acknowledged that failure to comply may result in dismissal of his claims or a bar to testifying in the case.

*Standards*

Federal Rule of Civil Procedure ("Rule") 37(b)(2)(A) exposes a party to a variety of sanctions for failure to comply with a court's discovery order.  "Rule 37 sanctions were intended to 'punish[] evasion of pretrial discovery.'"  *Wanderer v. Johnston*, 910 F.2d 652, 655 (9th Cir. 1990) (quoting Maurice Rosenberg, *Sanctions to Effectuate Pretrial Discovery,* 58 Colum. L. Rev. 480, 482 (1958)). The rule provides that the court may "dismiss[] the action or proceeding in whole or in part[.]"  FED. R. CIV. P. 37(b)(2)(A)(v) (2009).  The Supreme Court has held that the sanction of dismissal is appropriate when a party has acted in "flagrant bad faith [] after being expressly directed to perform an act by a date certain" and failed to perform that act even after "warnings that their failure . . . could result in the imposition of sanctions under [Rule] 37."  *National Hockey League v. Metro Hockey Club, Inc.*, 427 U.S. 639, 640-41, 643 (1976) (internal quotation marks omitted). The Ninth Circuit has articulated five factors for the court to apply in considering whether the sanction of dismissal is appropriate:  "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy

favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Thompson v. Housing Authority of City of Los Angeles*, 782 F.2d 829, 831 (9th Cir. 1986).

Where the drastic sanctions of dismissal or default are imposed, however, the imposition is limited to situations in which the losing party's non-compliance is due to "willfulness, fault, or bad faith." *Sigliano v. Mendoza*, 642 F.2d 309, 310 (9th Cir. 1981) "Willfulness" is present where the record demonstrates "disobedient conduct not shown to be outside the control of the litigant." *Henry v. Gill Industries, Inc.,* 983 F.2d 943, 948 (9th Cir. 1993). When considering dismissal, "the key factors are prejudice and availability of lesser sanctions." *Wanderer*, 910 F.2d at 656.

*Discussion*

Plaintiffs represented to Defendant that McNeil was the only person who received the original Exhibit 1 from Bill. Exhibit 1 is the key piece of evidence upon which Plaintiffs' claims turn; logically, therefore, the authenticity of Exhibit 1 is critical to Defendant's case preparation. Authenticity is also of particular importance in this case because Exhibit 1 appears to lack certain indicia of reliability that it might be expected to contain and Plaintiffs' claims depend on Exhibit 1's admissibility. For these reasons, and to ensure that the case proceeded in a cost-effective and orderly manner, the court directed the parties to first conduct discovery regarding Exhibit 1's origins and authenticity so that those issues could be resolved before the parties engaged in general discovery on the merits of Plaintiffs' claims.

McNeil's refusal to cooperate in the discovery process was willful. McNeil failed to appear for deposition three times. He refused to cooperate with attempts to accommodate his needs such that his testimony could be efficiently and reliably obtained. This conduct has prejudiced Defendant's ability to prepare his defense against Plaintiffs' claims. By requiring the parties to first

focus their discovery on what could be a dispositive issue in the case, the authenticity of Exhibit 1, the court intended to promote the expeditious resolution of this matter. McNeil's behavior has frustrated this process and delayed the case generally. McNeil's failure to comply has impaired the court's ability to manage its docket, in this specific case and, if left unchecked, may compromise the court's ability to enforce its discovery orders in future cases. The court observes that McNeil's sanctionable conduct has been that conduct solely within his control. And, while McNeil's individual claims, if dismissed as a sanction, would not be decided on the merits, the other Plaintiffs' identical claims would proceed on the merits, because none of those parties failed to comply with a court order in this case.

Two key factors remain for the court to analyze: "prejudice" and the "availability of lesser sanctions." *Wanderer*, 910 F.2d at 656. The starting point for analyzing these factors is to again note the importance of McNeil's testimony to the case generally and to the Defendant's ability to defend against Plaintiffs' claims specifically. Plaintiffs have offered McNeil as the person who received the original document from Bill and the only one who can testify as to its origins. It is vitally important that McNeil provide competent testimony; neither party's interests are served by unreliable testimony.

Given the importance of McNeil's testimony to authentication of Exhibit 1, an inability to depose McNeil under conditions intended to accommodate his needs and ensure the reliability of his testimony will prejudice Defendant. The Ninth Circuit has noted that "[a] defendant suffers prejudice if the plaintiff's actions impair the defendant's ability to go to trial or threaten to interfere with the rightful decision of the case." *Adriana Int'l Corp. v. Thoeren,* 913 F.2d 1406, 1412 (9th Cir. 1990), *cert denied* 498 U.S. 1109 (1991). McNeil's refusal to obey the court's discovery orders

9 - FINDINGS AND RECOMMENDATION

deprives Defendant of critical evidence on a threshold issue in the case and potentially prevents Defendant from effectively defending his position.

McNeil's failure to comply with this court's discovery orders also demonstrates that lesser sanctions do not effectively gain his compliance.  First, McNeil was informed that failure to comply with the court's order to provide his attorneys with a limited medical release could result in dismissal of his claims.  McNeil acknowledged the consequences and disobeyed the court's order nonetheless. Second, the court gave McNeil another chance to comply by issuing an order to show cause why his claims should not be dismissed.  Advised by his attorney of the court's show cause order, McNeil again refused to comply, and again acknowledged the potential for his own claims to be dismissed. This demonstrates that, in McNeil's case, sanctions short of dismissal are ineffective and unlikely to produce compliance.

Importantly, McNeil's dismissal is not solely the result of his refusal to provide a partial medical release.  Rather, dismissal is the culmination of substantial efforts by the court, Defendant, and Plaintiffs' counsel to obtain McNeil's testimony.  The court did not condition McNeil's dismissal on his compliance or non-compliance with granting the medical release, it conditioned dismissal on McNeil's compliance with all efforts to obtain his testimony.  McNeil's failures to cooperate with the court's attempts and to provide alternatives to achieve the needed result collectively gave rise to his dismissal from this case.

Finally, the court should bar McNeil from testifying in this case, in any form, unless he complies with the court's prior discovery orders.  This compliance must take place in advance of the final dispositive motion deadline to give Defendant sufficient opportunity to utilize McNeil's testimony in his defense.  Thus, at this point, the court will not exclude McNeil's testimony as an

10 - FINDINGS AND RECOMMENDATION

additional sanction because such a sanction would only penalize the other plaintiffs, whose conduct is not at issue and who had no control over McNeil's behavior. This sanction also would penalize Defendant because McNeil's testimony remains critical to his defense. Therefore, should McNeil choose to comply with the court's orders, then the remaining parties will still have the opportunity to obtain his critical testimony.

McNeil's compliance, however, will not affect the dismissal sanction the court recommends here; the Ninth Circuit has been clear that complying with a court's discovery order after having violated that order does not cure the party's disobedience. *See, e.g., Henry*, 983 F.2d at 947 ("squarely reject[ing]" the argument that subsequent compliance with court's order "purged" initial noncompliance); *North Am. Watch Corp. v. Princess Ermine Jewels,* 786 F.2d 1447, 1451 (9th Cir. 1986) (order of dismissal affirmed: "Belated compliance with discovery orders does not preclude the imposition of sanctions."); *G-K Properties v. Redevelopment Agency of San Jose,* 577 F.2d 645, 647-48 (9th Cir. 1978) (order of dismissal affirmed: "last minute tender" of discovery does not cure effects of discovery misconduct).

In sum, McNeil's knowing disregard of the court's order on two occasions, plus his prior deliberate failures to comply with discovery, justifies the sanction of dismissal of McNeil's individual claims under Rule 37(b)(2)(A)(v). However, McNeil may give testimony in this case upon complying with the court's prior orders, so as not to prejudice the remaining Plaintiffs and Defendant.

*Conclusion*

McNeil's individual claims in this case should be dismissed, with prejudice, and he should be barred from testifying in this matter unless and until he complies with the court's prior orders

11 - FINDINGS AND RECOMMENDATION

establishing appropriate procedures for securing his testimony.

*Scheduling Order*

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due no later than May 21, 2009. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

If objections are filed, any party may file a response within fourteen days after the date the objections are filed. Review of the Findings and Recommendation will go under advisement when the response is due or filed, whichever date is earlier.

DATED this 7th day of May, 2009.

JOHN V. ACOSTA
United States Magistrate Judge